UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAY MARTIN HEFFINGTON,<br><br>Defendant. | No.  1:93-cr-05021-NONE<br><br>ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. No. 309, 320) |

Pending before the court is defendant Ray Martin Heffington's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  The motion is largely based on defendant's medical condition and the risks posed to him by the ongoing coronavirus ("COVID-19") outbreak.  (Doc. No. 309.)  For the reasons explained below, defendant's motion will be granted.

**BACKGROUND**

On January 21, 1993, defendant Heffington and his two co-defendants were indicted in this action and charged with conspiracy to distribute and possess with the intent to distribute methamphetamine in violation of 21 U.S.C. § 846 and 841(a)(1) and possession with the intent to distribute methamphetamine and aiding and abetting the same in violation of 21 U.S.C. § 841(a)

/////

/////

/////

and 18 U.S.C. § 2. (Doc. No. 20.)[1]  In May of 1993 the case proceeded to jury trial where the evidence indicated that defendant Heffington had hired defendant Neil Stevens, agreeing to pay him $2,000 plus expenses, to drive a box wrapped like a Christmas present containing approximately five pounds of methamphetamine from Chowchilla to Iowa where he would meet the buyer, collect $50,000 and return.[2]  The plot apparently unraveled when defendant Stevens became concerned that he was being followed as he passed through Wyoming and threw the box containing the methamphetamine out the window, where it was later discovered by a truck driver and turned over to law enforcement. At trial, Heffington and co-defendant Stephen Kosinski were convicted on both counts. (Doc. Nos. 88–89.)  Prior to trial and pursuant to 21 U.S.C. §851, the government had filed a notice of information to establish that defendant Huffington had suffered two prior drug felony convictions. (Doc. No. 47.)[3]  Following his conviction, it was determined that under the U.S. Sentencing Guidelines defendant Heffington's adjusted offense level was 38 and his criminal history category was III, resulting in guideline range calling for a sentence of between 292 to 365 months imprisonment. (Presentence Report at 13.)  The court found that the defendant had accepted responsibility reducing his adjusted offense level to 36. However, as a result of the notice of his prior drug convictions being filed, by statute at the time "[t]he increased punishment require[d] a minimum sentence of life imprisonment with no release" pursuant to 21 U.S.C. § 841(b)(1)(A)(viii) (1992) (*Id.*) Accordingly, defendant Heffington was sentenced to two concurrent life terms of imprisonment on August 2, 1993. (Doc. No. 126.)

---

[1] The initiating of this prosecution pre-dates the CM/ECF system that federal courts have employed for many years. The first electronic entries do not begin to appear on the docket until the second half of 2002. The undersigned has obtained a copy of the presentence report from the U.S. Probation Office and has relied in part upon that document for this background. However, the court also notes that in 1993, presentence reports were not filed on the court's docket.

[2] The evidence introduced at trial established that defendant Kosinski was also involved in the transaction, including the financing of it.

[3] It appears the two prior drug convictions relied upon in this regard were defendant Heffington's 1987 conviction in state court for possession of cocaine upon which he was sentenced to probation and 270 days in the county jail and his 1988 conviction for possession of methamphetamine for which he was sentenced to probation and four months in the county jail. (Presentence Report at 7–9.)

Thereafter, Heffington's judgment of conviction and sentence was affirmed on appeal. *See United States v. Heffington*, 52 F.3d 335 (9th Cir. 1995) (unpublished). In 1996, 2001, 2007 and 2009 petitioner brought motions pursuant to 28 U.S.C. § 2255 and, in some instances, Rule 60(b) of the Federal Rules of Civil Procedure, challenging his conviction and sentence; all of which were denied by the original sentencing judge. *See United States v. Heffington,* CR-F-93-5021, 2016 WL 1626992, at *2–3 (E.D. Cal. Apr. 25, 2016) (reviewing procedural history of defendant's prior § 2255 motions)*; see also United States v. Heffington,* CR-F-93-5021, 2009 WL 2043012 (E.D. Cal. July 13, 2009); *United States v. Heffington*, CR-F-93-5021, 2008 WL 2055417 (E.D. Cal. May 13, 2008). Appeals from those denials were also unsuccessful. Finally, in 2016, defendant Heffington once again sought relief pursuant to § 2255 and moved for a reduction of his sentence pursuant to 18 U.S.C. § 3582 in light of Sentencing Guideline Amendment 782. *Heffington*, 2016 WL 1626992. The then-assigned district judge denied this latter motion on the ground that the subsequent reclassification of defendant's prior convictions to misdemeanor offenses did not entitle him to relief from his life sentence under binding Ninth Circuit precedent and because defendant had been sentenced to a statutory minimum mandatory term of imprisonment unaffected by changes in the sentencing guidelines. (*Id*. at *6.) The Ninth Circuit affirmed that order. *United States v. Heffington,* 780 Fed. Appx. 521 (9th Cir. 2019).

Defendant is currently serving his life sentence at the U.S. Bureau of Prisons' ("BOP") Victorville Federal Correctional Institute. (*Id.* at 5.) On April 2, 2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 309.) On April 9, 2020, the government filed its opposition to the motion, and on April 14, 2020, defendant filed his reply thereto. (Doc. Nos. 315, 316.) The parties thereafter submitted supplemental authority to the court. (Doc. Nos. 317, 318, 319.) Finally, on July 29, 2020, defendant filed a request for immediate grant of compassionate release, bringing to the court's attention the significant outbreak of the COVID-19 virus at FCI Victorville where he is imprisoned. (Doc. No. 320.)

/////

/////

3

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, __ F. Supp. 3d __, 2020 WL 1673440, at *2 (D. Or. April 6, 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[4] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)   extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

---

[4] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[5]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[6]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing

---

[5] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[6] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g., United States v. Parker*, __ F. Supp.3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g., United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, Case No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be

"consistent with" the sentencing factors set forth in §3553(a)).

**A.    Administrative Exhaustion**

Defendant Heffington initially asserted that he had satisfied the applicable administrative exhaustion requirement because he submitted a request for compassionate release to the BOP, which the warden at the prison where he is incarcerated approved, but the BOP's General Counsel denied. (Doc. Nos. 309 at 5; 314 at 32.) Although defendant did not submit a copy of his request submitted to the BOP with his pending motion for compassionate release, he has attached to his motion the written denial signed by the BOP's General Counsel dated back on December 4, 2018, which was before the FSA was enacted and authorized motions such as this one to be brought by defendants. (Doc. No. 314 at 32.) The government contends, without further explanation or support, that defendant "has not shown that he has filed any renewed administrative request with the warden or BOP at all." (Doc. No. 315 at 12.)[7]

Regardless of whether the written denial of compassionate release issued by the BOP General Counsel on December 4, 2018, establishes defendant's exhaustion of his administrative remedies, such exhaustion is not seriously contested here. In moving this court for compassionate release, defendant's counsel has represented that a request for defendant's compassionate release was again forwarded to both the warden at Victorville and the BOP Regional Director on April 2, 2020, when the motion was filed with this court. (Doc. No. 309 at 9.) In defendant's most recently filed request for immediate grant of compassionate release, his counsel represents that as of July 29, 2020 there still has been no response received to that administrative request, that far more than thirty days have passed since its submission and that administrative exhaustion has

---

[7] Here, the court notes that the applicable regulation states as follows:

> When an inmate's request for consideration under . . . 3582(c)(1)(A) is denied by the General Counsel, the General Counsel shall provide the inmate with a written notice and statement of reasons for the denial. *This denial constitutes a final administrative decision*.

28 C.F.R. § 571.63(b) (emphasis added). In this case after the warden at the prison where defendant is confined approved of his compassionate release, the BOP General Counsel issued a written denial.

therefore been satisfied under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 320 at 2.) The government has not contested these representations and it has been recognized in other contexts that the failure to exhaust administrative remedies is an affirmative defense on which the party opposing the granting of relief bears the burden of proof. *See Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015); *Molina v. Holland*, No. 1:15-cv-01260-DAD-EPG, 2018 WL 1726647, at * (E.D. Cal. Apr. 10, 2018).

Therefore, the court concludes that defendant has exhausted his administrative remedies and will turn to the merits of the pending motion.

### B.   Extraordinary And Compelling Reasons

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g., United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or

/////

8

>> (III) experiencing deteriorating physical or mental health because of
> the aging process,
>
> that substantially diminishes the ability of the defendant to provide
> self-care within the environment of a correctional facility and from
> which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g., United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331 at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."[8] U.S.S.G. § 1B1.13, cmt. n.1(B). In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020).

Here, defendant Heffington argues that extraordinary and compelling reasons warranting his compassionate release exist due to his medical condition and age plus other related factors. (Doc. No. 309 at 6) (citing U.S.S.G. § 1B1.13, cmt. n. 1(B)). He points out that he is 75 years old

---

[8] As noted, when defendant was sentenced in 1992 to two concurrent terms of life imprisonment, as was then mandatory given the notice of his two prior drug related convictions, his sentencing guideline range was determined to actually call for a term of imprisonment of between 292 to 365 months. He has now served approximately 324 months in prison. Had he been eligible to earn good time credits of approximately 46 months, he would have by now served more than 100% of a high end of the guideline sentence in connection with his conviction in this case.

and has already served over 27 years in prison pursuant to his conviction in this court.  (Doc. No. 309 at 1.)  In light of his age, the only issue then is whether defendant "is experiencing a serious deterioration in physical or mental health because of the aging process."  *See* U.S.S.G. § 1B1.13, cmt. n. 1(B).  In this regard defendant Heffington notes that he "suffers from chronic obstructive pulmonary disease [COPD], asthma, emphysema, morbid obesity, and benign essential hypertension."  (Doc. No. 309 at 5.)  The medical record submitted to the court under seal largely supports defendant's description of his medical conditions and his continued need for an inhaler.  (*See* Doc. No. 314 at 1–30.)  In addition, when he was sentenced in this court some 27 years ago, it was noted that he was asthmatic, had pneumonia in the past, suffered from emphysema and even then utilized a bronchodilator to assist him with his shortness of breath.  (Presentence Report at 10.)  According to his counsel, defendant is confined to a wheelchair as a result of his various medical conditions.  (Doc. No. 316 at 10.)  In any event, the government does not dispute that defendant suffers from these ailments.

According to the United States Centers for Disease Control (CDC), defendant is at higher risk for becoming severely ill were he to contract COVID-19 because of his age and his medical conditions including asthma, COPD including emphysema, and morbid obesity.  *See Coronavirus Disease 2019 (COVID-19): Groups at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Aug. 3, 2020).  Defendant is at risk based on four separate categories the CDC has identified, and may be at risk for a fifth reason due to his "benign essential hypertension," though CDC's website identifies "pulmonary hypertension" as a specific at-risk category.  (*Id.*)  In short, it would appear clear that were defendant Heffington to contract COVID-19, it could well be fatal.

The government counters that "[a]lthough defendant has health concerns, he primarily emphasizes the general risk of COVID-19:  arguments that are general, wide-ranging, and would apply to essentially every unhealthy inmate presently in custody."  (Doc. No. 315 at 16.)  The government does not, however, squarely address whether defendant "is experiencing a serious deterioration in physical or mental health because of the aging process," *see* U.S.S.G. § 1B1.13,

10

cmt. n. 1(B), but instead contends that defendant is able to "provide self-care" within his BOP facility, *see id.* cmt. n. (A). (Doc. No. 315 at 16.) The government also argues that "Victorville is not a BOP medical facility, so Heffington's claim medical conditions are not serious enough to warrant placement in a facility with a higher level of medical care." (*Id.*) The court finds this latter argument particularly unpersuasive given the litany of defendant's medical issues. Moreover, if in enacting the FSA Congress had intended to limit compassionate release only to those prisoners confined in BOP's few medical facilities, it could have, and presumably would have, said so. With respect to the threat of COVID-19 to the defendant, the government primarily argues that such an argument is "speculative." (*Id.* at 17.) The government asserts, in the court's view erroneously, that according to CDC's website, "other than diabetes, [defendant's] medical conditions are not considered high risk." (*Id.* at 16 n.2.) *See Coronavirus Disease 2019 (COVID-19): Groups at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Aug. 3, 2020).

Several courts have held that where a prisoner suffers from COPD and asthma, when combined with the threat of contracting COVID-19, compassionate release may be warranted. *See, e.g.*, *United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 3:92-CR-0070 (JCH), 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020) (collecting cases and finding extraordinary and compelling reasons where defendant was "65 years old [and] suffers from COPD, asthma, and other lung-related ailments"). Other courts have concluded compassionate release was appropriate in cases of defendants suffering from similar ailments in light of the COVID-19 pandemic. *See, e.g.*, *United States v. Gonzalez*, No. 18-cr-1536155, 2020 WL 1536155, at *3 (E.D. Wash. Mar. 31, 2020) (approving compassionate release where defendant "is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable"). Here, defendant Heffington arguably suffers from more serious conditions than most prisoners who have been released, through compassionate release or other BOP administered policies, during the COVID-19 pandemic. Specifically, defendant Heffington suffers from at least four (and potentially five) separate medical conditions that, along with his

11

1  advanced age, place him at a substantially higher risk for becoming severely ill were he to
2  contract the virus.
3        The government points out that at the time of the filing of their opposition to the pending
4  motion on April 9, 2020, there had been no reported cases of COVID-19 at FCI Victorville where
5  defendant Heffington is imprisoned. (*See* Doc. No. 315 at 15.) This argument too is
6  unpersuasive. First, even if that were the case, the lack of reported COVID-19 cases is not
7  dispositive on the issue of compassionate release. Indeed, courts have recognized that where a
8  defendant's medical conditions are so severe, he may be entitled to release even if there are no
9  positive cases for the virus being reported at his prison. *See, e.g.*, *United States v. Ben-Yhwh*, No.
10 15-00830 LEK, 2020 WL 1874125, at *2–4 (D. Haw. Apr. 13, 2020) (ordering release of
11 defendant housed in a BOP medical facility which had "no reported cases of COVID-19" because
12 defendant "suffers from a mental illness as well as other physical ailments including Parkinson's
13 Disease, cardiac problems, asthma, high blood pressure, diabetes, high cholesterol, arthritis and
14 glaucoma"); *United States v. Pomante*, No. 19-20316, 2020 WL 2513095, at *6 (E.D. Mich. May
15 15, 2020) (ordering release of defendant who was 69 years old and suffered from chronic kidney
16 disease, hypertension, and diabetes, stating that "the Court is not persuaded that a lack of
17 confirmed cases is a compelling reason not to grant relief if a defendant otherwise qualifies").
18 Other courts have granted compassionate release with no discussion of whether a prison has
19 reported any cases of the virus where the defendant suffers from serious medical issues. *See, e.g.*,
20 *Gonzalez*, 2020 WL 1536155, at *1–3. And some courts have questioned the relevance that a
21 particular BOP facility has no reported cases where the government is unable to represent the
22 amount of testing that has been conducted at the facility. *See, e.g.*, *United States v. Amarrah*, No.
23 17-20464, 2020 WL 2220008, at *6 (E.D. Mich. May 7, 2020) ("*Zero confirmed* COVID-19
24 cases is not the same thing as zero COVID-19 cases.").
25       Second, unfortunately, the factual predicate for the government's argument is no longer
26 true. Attached to defendant's recently filed request for the immediate grant of his pending motion
27 are public documents reflecting that as of July 29, 2020, 113 prisoners at FCI Victorville have
28 /////

tested positive for the virus as have 7 staff members.[9] Thus, in just 111 days the active COVID-19 virus cases at FCI Victorville went from 0 to 113. This development is more than sufficient to convince this court that the defendant's advanced age, medical conditions and the fact that several of those conditions place him at higher risk of becoming seriously ill if infected by COVID-19, when considered in combination with the outbreak of the virus at his prison of confinement, constitute extraordinary and compelling reasons warranting a reduction of his sentence. Alternatively, the court also concludes that the fact that defendant is 75 years old, has served over 27 years in prison (far in excess of 10 years), and suffers from various serious medical conditions establishes "a serious deterioration in [his] physical or mental health because of the aging process," and that defendant has, for these reasons, demonstrated that "extraordinary and compelling reasons" justify the granting of compassionate release in his case. *See* U.S.S.G. § 1B1.13, cmt. n. 1(B).

**C.     Consistency With the § 3553(a) Factors**

Finally, any relief to be granted pursuant to 18 U.S.C. § 3582(c)(1)(A) must be consistent with the sentencing factors set forth in §3553(a).[10] *Trent*, 2020 WL 1812242, at *2; *see also Parker*, 2020 WL 2572525, at *11. Here, consideration of the § 3553(a) sentencing factors also support defendant Heffington's release.

/////

---

[9] According to the BOP website, FCI Victorville has a total population of approximately 1,135 prisoners.

[10] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

The methamphetamine trafficking offense of which defendant was convicted in 1992 was a serious one involving the sale of approximately five pounds of methamphetamine for $50,000. However, defendant has already served 27 years in prison for that offense. (Doc. No. 309 at 1.) In the undersigned's view, a 27-year sentence obviously reflects the seriousness of that offense, is sufficient to promote respect for the law, and provides just punishment while also affording adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(A), (B). Moreover, at 75 years of age and in poor health, it cannot be said that defendant Heffington's continued confinement is necessary "to protect the public from further crimes." 18 U.S.C. § 3553(a)(2)(C). Last, given defendant's serious deterioration in health, the granting of compassionate release would serve to "provide the defendant with needed . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

The sentencing factors set forth in § 3553(a) also instruct courts to consider "the kinds of sentence and the sentencing range established for" the underlying conduct. 18 U.S.C. § 3553(a)(4). The court must also consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In this case, co-defendant Stephen Kosinski, who appeared to have a financial interest in the failed methamphetamine transaction, was sentenced in August of 1993 to a 20–year term of imprisonment but was released from prison after serving approximately 13 years in August of 2006 and had his term of supervised release terminated early, less than a year later. (See Doc. Nos. 125, 240.) Thus, any sentencing disparity considerations strongly weigh in favor of the granting of relief in defendant Heffington's case.[11] Likewise, consideration of

---

[11] While defendant's underlying conviction was quite serious, his counsel points out in the pending motion that under the FSA, mandatory minimum sentences for defendants convicted of possessing 50 grams or more of methamphetamine with the intent to distribute after having suffered two prior felony drug convictions now face a mandatory minimum sentence of 25 years imprisonment as opposed to life. (Doc. No. 309 at 8.) Defendant's counsel also observes that defendant's prior felony drug convictions in state court which subjected him to the mandatory life sentence in this case are now misdemeanor offenses in the wake of the passage of California's Proposition 47 in 2014. (Doc. No. 309 at 7–8.) While these circumstances did not entitle defendant to relief under the law, nonetheless, the fact remains that today defendant's prior state drug convictions would not have implicated even a mandatory minimum sentence of 25 years imprisonment under 21 U.S.C. § 841(b)(1)(A)(viii).

14

defendant's characteristics and history support compassionate release as well. His prior drug possession convictions in state court both resulted in the imposition of probationary sentences with county jail terms as a condition thereof. These sentences speak to the relatively low level criminal conduct involved in those prior convictions. In addition, but for one disciplinary incident for fist–fighting and refusing to stop after being ordered to do so by guards over five years ago, defendant has been essentially discipline free throughout his 27 years in the custody of the BOP. (*See* Doc. Nos. 309 at 8, 314 at 34.) Engaging in a single prison fist–fight with no involvement of weapons over the course of living in prison for 27 years does not come close to outweighing all of the factors supporting defendant's compassionate release.[12]

Finally, that defendant Heffington is serving a life sentence of imprisonment does not preclude his compassionate release. Even before the COVID-19 pandemic, courts recognized that circumstances could warrant the granting of compassionate release even in the case of prisoners serving life sentences. *See United States v. McGraw*, No. 2:02-cr-00018-LJM, 2019 WL 2059488, at *1–2 (S.D. Ind. May 9, 2019) (ordering the compassionate release of a defendant who had served 16 years of his life sentence following his conviction for conspiracy to possess with the intent to distribute and distribution of 20 pounds of methamphetamine, and was now 72 years old and suffering from diabetes, hyperlipidemia, emphysema, stage three kidney disease, and hepatitis C); *United States v. Mondaca*, No. 89-CR-0655 DMS, 2020 WL 1029024, *8–9 (S.D. Cal. Mar. 3, 2020) (ordering the compassionate release of a defendant who had served at least 10 years of his sentence of life without parole pursuant to his conviction for conspiracy to possess with the intent to distribute 33 pounds of cocaine, was now 77 years old, suffered from a deterioration in physical health, and was "increasingly vulnerable to victimization within the correctional facility").

## CONCLUSION

For the reasons explained above, the court concludes that defendant Heffington has demonstrated that "extraordinary and compelling reasons" exist warranting his compassionate

---

[12] The court again notes that the warden at defendant's prison of confinement approved of his compassionate release in 2018 even though this fight occurred in April 2015.

release from prison.  Moreover, the court finds that the granting of release at this time is consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a).   The previously imposed sentence of concurrent terms of life imprisonment is therefore reduced to a sentence of time served pursuant to 18 U.S.C. § 3582(c)(1)(A).

Accordingly:

1. Defendant's motion for compassionate release (Doc. No. 309) and his request for immediate grant of compassionate release (Doc. No. 320) are granted;
2. Defendant is to be released immediately from the custody of the Bureau of Prisons; and
3. The Court finds that a term of supervised release would adequately address the seriousness of defendant Heffington's offense and the need for the original sentence imposed while balancing the extraordinary and compelling circumstances that warrant Heffington's compassionate release.

Therefore, upon release from imprisonment, defendant Ray Martin Heffington shall be placed on supervised release for a term of Life on each of Counts 1 and 2, to run concurrently for a total term of Life.  Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report telephonically to the probation office in the district to which he is released.

While on supervised release, the defendant shall not commit another federal, state, or local crime and shall not illegally possess controlled substances.  The defendant shall cooperate in the collection of DNA as directed by the probation officer and shall comply with the standard conditions which have been recommended by the United States Sentencing Commission and adopted by this Court (see attached).

Further, the defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed four (4) drug tests per month.

Based on the nature of the offense of conviction, the circumstances of the offenses, and to ensure the defendant's income comes from legitimate sources, the defendant shall also comply with the following special conditions:

1. The defendant shall submit to the search of his person, property, home, and vehicle by a United States probation officer, or any other authorized person under the immediate and personal supervision of the probation officer, based upon reasonable suspicion, without a search warrant.  Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

2. The defendant shall provide the probation officer with access to any requested financial information.

IT IS SO ORDERED.

Dated:   **August 3, 2020**                              /s/ Dale A. Drozd
                                                         UNITED STATES DISTRICT JUDGE

**STANDARD CONDITIONS OF SUPERVISION**

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4. You must answer truthfully the questions asked by the probation officer.

5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment, you must try to find full-time employment, unless the probation

officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers).

11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13. You must follow the instructions of the probation officer related to the conditions of supervision.